IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD DEWAYNE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07 C 7048 |
| | ) | |
| STATE OF ILLINOIS; STATE OF WEST VIRGINIA; OFFICE OF THE ILLINOIS ATTORNEY GENERAL; RICHARD CAUBLE and MARK DELIA, INVESTIGATORS FOR THE OFFICE OF THE ILLINOIS ATTORNEY GENERAL; ILLINOIS DEPARTMENT OF STATE POLICE; LARRY G. TRENT, DIRECTOR; JOHN SALEMME; HERMINIO FLORES, JR.; FUGITIVE APPREHENSION TASK FORCE OF THE UNITED STATES MARSHALS SERVICE IN THE NORTHERN DISTRICT OF ILLINOIS; THOMAS DART, SHERIFF OF COOK COUNTY, ILLINOIS; ANITA ALVAREZ, STATES ATTORNEY OF COOK COUNTY, ILLINOIS; JENNIE SCHECK, COOK COUNTY ASSISTANT STATE'S ATTORNEY; JEFFERSON COUNTY, WEST VIRGINIA, BOARD OF EDUCATION; DAVID DIDDEN; GREGORY DIDDEN; MARGARET DIDDEN; BRAUN HAMSTEAD; and MICHAEL D. THOMPSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ronald Smith has sued various individuals and government entities for damages and injunctive relief under 42 U.S.C. §§ 1983 and 1985. Smith alleges that the defendants have violated his constitutional rights in connection with his arrest and

1

indictment in Illinois state court. Smith also petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3), naming as respondents the State of Illinois and Cook County Sheriff Thomas Dart. The defendants have moved the Court to dismiss Smith's claims.

## Background

The Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [his] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted).

Smith alleges that starting in July 1992, David Didden conspired with his parents, Gregory and Margaret Didden; Braun Hamstead, attorney for the Jefferson County Board of Education and a family friend to the Diddens; and Jefferson County Prosecutor Michael Thompson to bring false criminal charges of sodomy against Smith based on David Didden's false claim of a repressed memory of sexual abuse allegedly made so that he could evade military service. Didden accused Smith of sexually abusing him in 1975, when Didden was a minor. Smith alleges that the crime with which he was charged, "crimes against nature (to wit: sodomy)," was not a crime under West Virginia law in 1975. Compl. at 12.

At the time of the West Virginia criminal charges, Smith was a teacher in Jefferson County. He alleges that he was forced to resign his position due to the pending charges and an administrative proceeding based on Didden's allegations.

Smith was formally charged in West Virginia with six counts of "crimes against nature (to wit: sodomy)." Smith alleges that he maintained his innocence and refused

2

to plead guilty. He alleges that Thompson, Hamstead, the Diddens, and the Jefferson County Board of Education agreed that Thompson would "obtain Smith's conviction by offering Smith's public defender an agreement where in (sic) Smith would make no plea and that [Thompson] would represent to the Jefferson County Circuit Court an agreement for probation." Compl. at 13. Smith alleges that on February 28, 1995, he was forced into a plea agreement in which he would receive three years probation in return for a plea of *nolo contendre*. Smith alleges that he tried to withdraw from the agreement, but that, upon the urging of Thompson, the Diddens, and Hamstead, the judge refused. On July 7, 1995, the judge sentenced Smith to one to ten years of suspended prison time and three years of probation. The judge further barred Smith from employment with any organization that works with young people and required him to register as a sex offender.

Smith alleges that the conspiracy continued when the Diddens, Hampstead, and Thompson agreed to get Smith's probation revoked on August 23, 1996. Due to the revocation, Smith was incarcerated from November 29, 1996 until October 12, 2001.

On August 24, 2001, Smith initiated state habeas corpus proceedings in West Virginia. After an evidentiary hearing, Smith indicated that he would forego many of the claims in his petition if the state would amend his criminal record and his sex offender status. On January 2, 2003, the State of West Virginia agreed to amend Smith's criminal record to reflect that he was charged and convicted with "crimes against nature," eliminating the reference to sodomy. The state also agreed to limit the time Smith would be required to register for inclusion in the West Virginia State Police Sex

3

Offender Registry for a period of ten years from his release from incarceration—in other words, until October 12, 2011.

In the fall of 2003, Smith enrolled in a course of study at the Moody Bible Institute using funds granted to him by the Department of Veterans Affairs, and he moved to Chicago, Illinois. On November 1, 2005, Mark Delia, an investigator for the Illinois Attorney General, received from a West Virginia assistant prosecuting attorney a request for assistance in locating and arresting Smith. Delia requested assistance from the United States Marshals' Service. Smith alleges that the U.S. Marshal deputized Chicago Police Officers John Salemme and Herminio Flores, Jr. to effectuate Smith's arrest.

The Court recounted Smith's allegations regarding his arrest, detention, and Illinois prosecution in a previous ruling on certain defendants' motions to dismiss. *Smith v. Illinois*, No. 07 C 7048, 2008 WL 4951232, *1-*2 (N.D. Ill. Nov. 17, 2008) ("*Smith I*").

Smith alleges that Jenni Scheck, a Cook County assistant state's attorney, caused Salemme and Flores to re-arrest Smith on June 4, 2007 for failing to register as a sex offender. During this re-arrest and interrogation, Smith alleges that he was mistreated and forced to sit in cramped spaces for long periods of time, which he says "inflamed" his "continuing infirm health situation." Compl. at 32. Although he asked to speak to his lawyer, Smith was not released for another three and one-half hours.

Smith is currently out on bail, awaiting his criminal trial in Illinois state court for failure to register as a sex offender in this state.

On November 17, 2008, this Court granted the State of Illinois', Madigan's, Devine's, and Dart's motions to dismiss Smith's claims against them. The Court denied Smith's motion for reconsideration of its ruling on January 8, 2009. *Smith v. Illinois*, No. 07 C 7048, 2009 WL 65449 (N.D. Ill. Jan. 8, 2009) ("*Smith II*"). On January 7, 2009, Smith filed a second amended complaint in which he repeated most of the allegations from his prior complaint and made some new allegations. The Court granted the State of Illinois', Madigan's, Anita Alvarez's,[1] and Dart's renewed motions and dismissed Smith's claims against them with prejudice. *Smith v. Illinois*, No. 07 C 7048, 2009 WL 10066277 (N.D. Ill. April 20, 2009) ("*Smith III*").

All of the remaining defendants likewise moved the Court to dismiss the second amended complaint. The Court set briefing schedules on the various motions, but Smith failed to respond in a timely manner to any of them. Rather, he asked for two extensions of time, which the Court granted. Smith responded to the motions by David Didden, Michael Thompson, and the Jefferson County Board of Education, but he did not respond to any of the others. After an admonishment that the Court would not entertain any further requests for extension, Smith moved the Court to schedule a discovery conference. In that motion, he said that certain of the defendants' motions were improper motions to dismiss and suggested that he needed discovery to respond to some of them. Smith did not identify, however, any particular discovery he legitimately required. The Court dismissed Smith's motion—which appeared to be a delaying tactic—telling him that if he believed he needed particular discovery to respond

---

[1]Anita Alvarez became the Cook County State's Attorney before Smith filed his second amended complaint.

to particular motions, Smith should file a motion so stating. He filed nothing further and did not request another extension of time. Smith has thus forfeited the right to respond to the remaining motions.

## Discussion

A. **West Virginia defendants**

1. **State of West Virginia**

The State of West Virginia contends that it is immune from suit under the Eleventh Amendment. Smith has failed to respond to West Virginia's motion, despite several extensions of time granted by this Court. In any event, the Court cannot find any reason why it should treat West Virginia any differently than it did Illinois. *See Smith I*, 2008 WL 4951232, at *2.

Suits against a state are barred absent the state's consent. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). The Court can discern no basis upon which to deny West Virginia's motion to dismiss.

2. **Jefferson County Board of Education, Braun Hamstead, Michael Thompson, David, Gregory, and Margaret Didden**

The remaining West Virginia defendants argue that Smith's claims against them should be dismissed for several reasons, including lack of personal jurisdiction. Because the Court concludes that it lacks personal jurisdiction over any of these defendants, it need not address the remaining grounds for dismissal.

The Jefferson County Board of Education, Hamstead, Thompson, and the Diddens contend that they lack the minimum contacts with Illinois necessary to allow

this Court to exercise jurisdiction over them in this case. Smith contends that the conspiracy theory of personal jurisdiction allows for personal jurisdiction because he has alleged that the defendants conspired to deprive him of his civil rights and his employment rights as a veteran.

Because section 1985 is silent with respect to personal jurisdiction, this Court has jurisdiction over a non-resident defendant only if an Illinois state court would have jurisdiction over that defendant. *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008). Illinois' long-arm statute "encompasses the conspiracy theory of jurisdiction." *Cameron v. Owens-Corning Fiberglas Corp.*, 296 Ill. App. 3d 978, 986, 695 N.E.2d 572, 577 (1998).

The theory's reach, however, recently has been limited. In *Ploense v. Electrolux Home Products*, the court traced the development of the conspiracy theory in Illinois. *Ploense v. Electrolux Home Products, Inc.*, 377 Ill. App. 3d 1091, 1105-06, 882 N.E.2d 653, 665-67 (2007). The theory was first grounded in the idea that one conspirator's actions in the forum state could be imputed to fellow conspirators because each acts as an agent of the others. *Id.* at 1105, 882 N.E.2d at 666 (citing *Green v. Advance Ross Elect. Corp.*, 86 Ill. 2d 431, 440-41, 427 N.E.2d 1203, 1208 (1981)). The Illinois Supreme Court later held, however, that no agency relationship exists among conspirators, "effectively scuttling the [conspiracy] 'theory of jurisdiction.'" *Id.* (citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (1998)). In *Ploense*, the court declined to exercise personal jurisdiction because the

plaintiff did not allege any activity that the defendant purposely directed at Illinois. *Id.* at 667.

Even if the tortious acts of one co-conspirator could be imputed to another by virtue of the existence of the conspiracy, Smith has failed to allege that *any* of the alleged conspirators committed an act in—or directed towards—Illinois. Smith alleges that the West Virginia defendants conspired and acted to have him wrongfully convicted of "crimes against nature" in order to spare David Didden from military duty in Operation Desert Storm. All of the activities Smith alleges, from the allegedly false indictment to Thompson's alleged promise that he would not be required to register outside West Virginia, occurred within West Virginia. The only connection with Illinois arose when a prosecuting attorney in Berkeley County, West Virginia, allegedly requested assistance from the Illinois Attorney General to locate and arrest Smith.[2] Smith has not alleged or even hinted that any of the West Virginia defendants caused or participated in that act.

In his response to Thompson's motion, Smith says "it is plausible to a reasonable degree of certitude Thompson [sic] pursued Smith into Illinois providing 'conviction' data to the Berkeley County prosecutor." Smith Response to Thompson Mot. at 10. This speculation is insufficient to defeat Thompson's motion to dismiss. Because Thompson submitted evidence that he did not participate in the issuance of the Berkeley County warrant, Smith was required to "establish jurisdiction by competent proof." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999) ("The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional

---

[2]The prosecuting attorney, identified as Josh Henline in Smith's second amended complaint, is not named as a defendant.

issue once a defendant proffers evidence that calls the court's jurisdiction into question."). He has failed to do so.

Smith cites *Kohler Co. v. Kohler Int'l Ltd.*, 196 F. Supp. 2d 690, 697 (N.D. Ill. 2002), in opposing the arguments of the West Virginia defendants. That case, however, supports the defendants. *Kohler* recognizes that "[s]imply alleging that a defendant participated in a conspiracy and that another member of the conspiracy committed an unlawful act in the forum state is not enough to reach a nonresident co-conspirator." *Id.* In that case, the court exercised jurisdiction over a nonresident defendant who was alleged to have participated in a conspiracy to promote an infringing product in Illinois. *Id.* at 698. In the present case, by contrast, Smith alleges no action directed at Illinois by any alleged member of the conspiracy. Rather, he alleges a series of actions that took place in West Virginia and were aimed at procuring Smith's allegedly wrongful conviction and incarceration there, not in Illinois.

**B.     United States Marshals Service Fugitive Task Force**

The Marshals Service has moved the Court to dismiss Smith's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Marshals Service contends that Smith's suit is barred by sovereign immunity.

The United States is generally immune from suit unless it consents to be sued. *LaBonte v. United States*, 233 F.3d 1049, 1051 (7th Cir. 2000). The Supreme Court has implied a private right of action against individual federal agents[3] for violations of

---

[3] Smith has also sued the individual officers, Salemme and Flores, who allegedly acted as agents of the Marshals Service during his arrest. His claims against them are discussed below.

federal constitutional rights. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971). That right does not extend to suits against federal agencies. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). As a result, Smith's claim against the Marshals Service cannot stand.

**C.    Illinois defendants**

    **1.    Mark Delia and Richard Cauble**

Delia and Cauble have moved the Court to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). They contend that Smith's suit is barred by the statute of limitations, the existence of probable cause, and the doctrine of qualified immunity.

Because section 1983 does not include a statute of limitations, this Court borrows the Illinois statute of limitations for personal injury torts. *Malone v. Corrections Corp. of America*, 553 F.3d 540, 541 (7th Cir. 2009) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). That period is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) (citing 735 ILCS 5/13-202; *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005)). Smith alleges that Delia and Cauble received and recorded false information from West Virginia prosecutors and requested assistance from the Marshals Service on November 1, 2005. Although it is not entirely clear, Smith's complaint appears to allege an unlawful arrest. The statute of limitations on a section 1983 action for wrongful arrest begin to run when the litigant appears before an examining magistrate and is bound over for trial. *Wallace v. Kato*, 549 U.S. 384, 391 (2007).

In his complaint, Smith alleges that he was arrested on November 2, 2005 and appeared before the Circuit Court of Cook County on the following day. Thus, Smith's complaint was timely only if he filed it before November 4, 2007. Smith filed his original complaint on December 14, 2007, but he did not file his first amended complaint—the first document to name Delia as a defendant—until April 19, 2008. Smith did not name Cauble as a defendant until January 7, 2009. Thus, even assuming that Smith's amended complaints relate back to the original filing date of December 14, 2007 under Federal Rule of Civil Procedure 15(c)(1), his claims against Delia and Cauble are time-barred.

> **2.   John Salemme and Herminio Flores, Jr.**

Chicago Police Officers Salemme and Flores likewise contend that Smith's claims against them are time-barred. As stated earlier, the statute of limitations for section 1983 actions in Illinois is two years. Causes of action for improper search or seizure under the Fourth Amendment accrue at the time of the arrest or search. *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995) (citing *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)).

Smith makes two sets of allegations against Salemme and Flores. The first set—based on Smith's initial arrest in Illinois on November 2, 2005—is clearly time-barred, because Smith filed his initial complaint more than two years later, on December 14, 2007. *Dominguez*, 545 F.3d at 588. The second set of allegations, however, is based on another arrest, which Smith alleges occurred on June 3, 2007.

Smith is well with in the statute of limitations with respect to this incident. Salemme and Flores failed to address this incident in their motion to dismiss.

Salemme and Flores advance another argument to support dismissal. They contend that Smith's complaint is deficient under Federal Rule of Civil Procedure 8(a) because it fails to attribute specific conduct to the individual officers. Although Smith does not ascribe specific words or conduct to either individual, he alleges that the two officers arrested him at the "Criminal Courts Building at 26th and California" on June 3, 2007, questioned him while he was "handcuffed to a rail," and detained him for "three and one half hours" after he had asked to speak with his lawyer. Compl. at 31-32. This is sufficient to put the officers on notice of the grounds upon which Smith's claim rests. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The complaint sets forth the date, the time, and the location of the alleged misconduct, as well as the actions that Smith contends are a violation of his constitutional rights. The fact that Smith has not specifically identified which officer performed which acts is not fatal to his claim at this stage of the litigation. *See La Porte County Republican Cent. Comm. v. Brd. of Com'rs of County of La Porte*, 43 F.3d 1126, 1129 (7th Cir. 1994) ("A complaint may not be dismissed under Fed. R. Civ. P. 12(b)(6) just because it omits factual allegations.").

As a result, the Court dismisses Smith's claims against Salemme and Flores arising out of the November 2005 arrest but not those arising out of the June 2007 arrest.

### 3. Jenni Scheck

Assistant State's Attorney Scheck contends that Smith's claims against her must be dismissed because *Younger* requires abstention in this case and prosecutorial immunity protects her against Smith's claim for damages.

Smith's request to enjoin Scheck from pursuing the state criminal prosecution runs afoul of *Younger v. Harris,* 401 U.S. 37 (1971). The Court has already determined that *Younger* abstention is appropriate in this case. *See Smith I*, 2008 WL 4951232, at *4. The Court previously determined—twice—that Smith's prosecution does not present extraordinary circumstances that would warrant the disruption of a pending state court proceeding. *See id.*; *Smith III*, 2009 WL 10066277, at *2. Smith has made no new contentions that could support a different conclusion.

Smith also makes a claim for damages against Scheck in her individual capacity. Scheck contends that absolute prosecutorial immunity, or at least qualified immunity, protects her from suit.

Scheck's decision to institute and pursue the criminal case against Smith is a purely prosecutorial function that is protected by absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("in initiating a prosecution an in presenting the State's case, the prosecutor is immune from a civil suit for damages"). On the other hand, accepting as true Smith's allegation that Scheck ordered his re-arrest, directing an arrest is not a purely prosecutorial function that would support absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to

an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.")  As a result, Scheck must rely on qualified immunity, which protects public officials from suit for actions that do not violate clearly established constitutional law.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Smith has failed to argue—and this Court has not found any authority to support an argument—that causing his arrest for failure to register as a sex offender violates his clearly established constitutional rights.  Smith alleges that his prosecution under the Illinois Sex Offender Registration Act violates his constitutional rights.  The constitutionality of the Act, however, has been upheld.  *People v. Malchow*, 193 Ill. 2d 413, 418-27, 739 N.E.2d 433, 437-42 (2000).  *See also, Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 4 (2003) (holding that a sex offender registration requirement does not violate procedural due process).  Thus, this cannot form the basis of a claim of violation of clearly established constitutional law.

Smith also alleges that Scheck ordered his re-arrest in June 2007.  Scheck contends that this alleged action is protected by qualified immunity because probable cause already existed for the arrest due to Smith's continued failure to register as a sex offender in Illinois.  Smith alleges in his complaint that he was arrested without probable cause, but it is not clear which arrest allegedly lacked probable cause.  Even assuming that Smith intended to allege that the June 2007 arrest was not supported by probable cause, he has failed to address Scheck's contention that his admitted failure to register

as a sex offender constituted probable cause and has thus effectively conceded the point.

4. **Illinois State Police and Larry G. Trent**

The Illinois State Police and Trent, its director, move the Court to dismiss the complaint pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They contend that the Eleventh Amendment bars Smith's suit.

The doctrine of sovereign immunity, embodied in the Eleventh Amendment, bars suits by individuals against a state unless it consents to suit or federal legislation unequivocally abrogates that immunity pursuant to a constitutional grant of authority. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)*; Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)*; Hans v. Louisiana*, 134 U.S. 1, 16 (1890). There has been no consent by Illinois in this case, and section 1983 did not create an exception to sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Thus, Smith's claim against the Department of State Police must be dismissed. *Jensen v. State Bd. Of Tax Com'rs of State of Indiana*, 763 F.2d 272, 276 (7th Cir. 1985) (citing *Pennhurst*, 465 U.S. at 100) (suits against a state agency or department "are clearly proscribed by the Eleventh Amendment").

*Ex Parte Young* provides a limited exception to the doctrine of sovereign. immunity—it allows suits against a state officer in his official capacity for equitable relief that is prospective in nature. *Pennhurst*, 465 U.S. at 102; *Ex Parte Young*, 209 U.S. 124, 160 (1908). Smith's request to be taken off the sex offender registry is a prayer for

prospective equitable relief. Trent contends, however, that the act of placing Smith's name on the registry cannot violate his civil rights.

Although it is not entirely clear which constitutional rights Smith contends have been violated by the placing of his name on the Illinois sex offender registry, it appears that his allegations concerning Trent center on the due process clause of the Fourteenth Amendment. Smith contends that his name and image were placed on the sex offender registry without notice and an opportunity to be heard.

Smith may challenge the constitutionality of the Act in his state court proceeding. It is not certain, however, that he will have an opportunity during that proceeding to present what appears to be a procedural due process claim. On the other hand, a ruling by this Court granting or denying an injunction to remove Smith's name and image from the database would risk interference with the pending state criminal prosecution, as such a ruling very easily could be understood as weighing in on the merits of the state court case in some way.

In similar situations, courts will stay—rather than dismiss—the federal claim, pending the outcome of the state criminal proceeding. "A stay allows the state case to go forward 'without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists.'" *Simpson v. Rowan*, 73 F.3d 134, 139 (7th Cir. 1995) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 202-03 (1988)). The Court will stay Smith's claim for injunctive relief against Trent pending the conclusion of the state prosecution.

**Conclusion**

For the reasons stated above, the Court grants the motions to dismiss filed by defendants Margaret and Gregory Didden [76], West Virginia and McGraw [81], Jefferson County Board of Education [86], David Didden [101], Braun Hamstead [141], Michael Thompson [143], Mark Delia [160], Jenni Scheck [163], the United States Marshals Service [199], and Richard Cauble [224]. The Court grants the motion to dismiss by defendants Salemme and Flores [116] with respect to Smith's claims arising from the November 2005 arrest but denies that motion with respect to Smith's claims arising from the June 2007 arrest. The Court grants the motion to dismiss by the Illinois Department of State Police [155] and stays Smith's claim against Larry Trent pending the outcome of Smith's state prosecution. The case is set for a status hearing on 6/15/09 at 9:30 a.m., for the purpose of setting a discovery schedule on any remaining claims. The parties are directed to meet and confer by no later than 6/11/09 so that they can propose a schedule to the Court at the status hearing.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 27, 2009